UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADDIE M. HARDEE, : | |
| : | Civil Action No. 04-3801 |
| Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | July 13, 2005 |
| : | |
| JO ANNE B. BARNHART, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**HOCHBERG, District Judge.**

This matter is before the Court upon Plaintiff's application to review a final determination of the Administrative Law Judge ("ALJ"), pursuant to 42 U.S.C. § 1383 (c)(3). The matter has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.   Factual and Procedural Background**

On November 21, 2001, Plaintiff applied for Social Security Disability Insurance Benefits. She claimed that she became disabled on May 4, 1998 because of hypertension, high cholesterol, diabetes, and fatigue. Other alleged symptoms included difficulty breathing, chest pains, headaches, dizziness, anxiety, numbness in the extremities, lower back pain, trouble standing, walking and sitting, sleeping problems and incontinence. Plaintiff was fifty-three years old at the time she alleged she became disabled. Her application was denied on July 26, 2002. She requested reconsideration, and, on October 2, 2002, was denied. On October 16, 2002, Plaintiff submitted a request for a hearing. An ALJ heard the case on May 8, 2003. The ALJ

issued a decision on April 14, 2004, denying the claim.  On June 23, 2004, the Appeals Council denied Plaintiff's request for review.

     Plaintiff is a college graduate who speaks and reads English.  She had past relevant work as a sixth grade teacher in Jersey City, New Jersey.  Plaintiff testified that the job involved standing on her feet in front of a chalk board and moving up and down stairs to transport the children from one place to another.  She stated that teaching was stressful and that use of chalk caused excessive coughing, aggravating her breathing problems.  Plaintiff earned approximately $69,700 per year.  She last worked in May 1998, but was paid for sick time through November 1998.  As of November 1998, Plaintiff was granted disability retirement by the New Jersey Teacher's Pension System.  Plaintiff receives $1,899 a month net on her disability pension.  Plaintiff testified that she did not see any doctors, except for her personal physician, to qualify for this pension.  Plaintiff testified that she would have liked to have continued working and that it was not her plan to stop working after nineteen years.

     Plaintiff pointed to 1998 as the origin of her medical problems.  She testified that she stopped working due to chest pain, but acknowledged that she was not treated by a specialist at that time.  Plaintiff testified that she takes Amaryl and Actos for diabetes, Tricor for cholesterol, Toprol for high blood pressure and Singular for breathing.  Plaintiff's primary care physician also prescribed Xanax for Plaitniff's "nerves," although he never referred Plaintiff to a psychiatrist or psychologist.  Until approximately one month before her ALJ hearing, Plaintiff had used "pump medication" for shortness of breath.  Plaintiff acknowledged that she was a long time smoker but stated that she had quit just a few months before the ALJ hearing in May 2003.  Plaintiff denied any side effects from her medication.

Plaintiff testified that her feet and hands become numb after sitting, standing or walking a certain distance, but that feeling returns with exercise after ten to fifteen minutes. Plaintiff also reported back pain due to a medically confirmed herniated disc. Plaintiff testified that she experiences frequent headaches, generally lasting thirty to forty-five minutes, for which she takes Tylenol if the headache persists. Plaintiff also testified that her kidney problems cause frequent urination. Plaintiff underwent two laser surgeries for retinopathy in 2002, but can still drive and read with glasses.

On January 26, 1999, Dr. Keddis performed a psychiatric consultative examination. Plaintiff told Dr. Keddis that she could travel and use public transportation by herself. She also stated that she could prepare food for herself and straighten up her home. Plaintiff reported difficulty sleeping, poor appetite, no interests, anger and depression. On examination, Plaintiff's mood was anxious and depressed. However, Plaintiff was oriented with fair attention and concentration and intact memory. Plaintiff was diagnosed with adjustment disorder and anxious mood.

On July 26, 2000, Plaintiff was seen in the emergency room for severe abdominal pain, dyspepsia, and post-prandial abdominal fullness with nausea and vomiting. Plaintiff underwent an upper endoscopy and biopsy, which revealed diabetic gastroparesis, pre-pyloric and antral gastritis, and pyloric stenosis. Plaintiff's diabetes was noted to be controlled by diet. Plaintiff was discharged the same day, July 26, 2000. On December 1, 2000, Plaintiff underwent a colonoscopy with removal of a polyp.

On July 23, 2002, Dr. Galakos, a nonexamining state agency medical consultant, concluded that Plaintiff was capable of performing exertionally light physical activity.

Specifically, Dr. Galakos opined that Plaintiff could occasionally lift/carry up to twenty pounds, and frequently lift/carry up to ten pounds. He further opined that Plaintiff could stand/walk about six hours, and sit about six hours during an eight hour day. Moreover, Plaintiff had no functional limitations, except in climbing, and no environmental limitations.

On February 10, 2003, Plaintiff was hospitalized at Christ Hospital in Jersey City, New Jersey complaining of shortness of breath. Plaintiff's admitting diagnoses was coronary heart disease. Plaintiff underwent a cardiac catheterization, which confirmed severe stenosis of the left main coronary artery, normal left ventricular function, and normal pulmonary artery pressures. Following the catheterization, Plaintiff developed acute renal failure, which notably "resolved." Due to her symptoms and coronary artery disease, Plaintiff was kept in the hospital for transfer to Passaic General Hospital for coronary artery bypass graft.

On February 13, 2003, Plaintiff was admitted to Passaic General for cardiac surgery. Medical records described Plaintiff as a chronic "heavy" smoker, smoking a pack to a pack and a half of cigarettes a day, until the day of her admission to Passaic General. Plaintiff stated she developed shortness of breath on exertion in 1995 with no evidence of intrinsic pulmonary disease, except for resultant disease from smoking. Plaintiff was treated with bronchodilators and home oxygen, which she reported she had not taken in three years. The clinical note from Passaic General further indicated that Plaintiff's medical history was negative for any other major medical problems, except for non-insulin dependent diabetes mellitus and borderline hypertension, both of which were described as "controlled" for over ten years with medical therapy. Examination revealed regular heart rhythm and mild wheezing in both lung fields with mild rhonchi bilaterally. No edema was present in the extremities. A chest x-ray revealed

bibasilar atelectasis with slight increase in the AP diameter, and a pulmonary function test revealed restrictive lung disease with vital capacity of sixty-five. A February 13, 2003 electrocardiogram was normal.

On February 18, 2003, Plaintiff underwent triple bypass surgery at Passaic General Hospital. Plaintiff's post bypass course was unremarkable. On February 23, 2003, Plaintiff was discharged.

Concerning her activities of daily living, Plaintiff testified that she drives an automobile but has had difficulty since her coronary artery bypass surgery. Plaintiff stated on May 8, 2003 that she would be able to drive in six to eight weeks per her doctor's instruction. Furthermore, Plaintiff testified that she is able to go for walks and enjoys socializing and going to the movies. Plaintiff testified that she does limited housework. She goes to the grocery store and helps select things, washes dishes and sweeps the floors. Plaintiff testified that she can not do "heavy cooking" because she cannot lift "heavy objects" but she can make a sandwich. Plaintiff estimated that she could lift about ten pounds and is able to walk about half a block at a time. Plaintiff's sister-in-law also testified to support the Plaintiff regarding shortness of breath, swelling. bloating in the upper part of the body and an inability to walk for more than one block at a time.

## II.  Standard for Finding of Disability

An individual may be entitled to Social Security Benefits upon a finding of disability demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that she is not only unable to do her previous work, but cannot, considering her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner of Social Security ("Commissioner") uses the following five-step analysis to determine whether an individual is disabled:

Substantial Gainful Activity. The Commissioner first considers whether the individual is currently engaged in substantial gainful activity. If there is such activity, the individual will be found not disabled without consideration of her medical condition. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

Severe Impairment. If there is no substantial gainful activity, Plaintiff must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c)) and 416.920(c)).

Listed Impairment. If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. § 404, Subpart P or is equal to a Listed Impairment. If the individual has such an impairment, the Commissioner will find the individual disabled.

Past Work.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite her impairment, the individual has the residual functional capacity to perform her past relevant work.  Residual functional capacity is defined as what the claimant can still do despite her limitations.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  If she does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Other Work.  Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if she can do any other work.  If she cannot perform other work, the individual will be found disabled. 20 C.F.R. §§404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of production and persuasion through the first four steps; however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work and that jobs which the plaintiff can perform exist in substantial numbers in the national economy.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).   If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

**III.    Standard of Review**

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion. 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion. *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). "The ALJ's responsibility is to analyze all evidence and to provide adequate explanations when disregarding portions of it." *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolski v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978).

**IV.    Analysis**

In reaching the determination that Plaintiff was not entitled to disability benefits, the ALJ concluded that Plaintiff had the residual functional capacity to perform "light" work as defined in 20 C.F.R. § 404.1567, and was thus able to return to her past relevant work as a teacher. The

ALJ decided that Plaintiff's medically-determined diabetes, hypertension, and high cholesterol did not preclude her performance of work-related activities as a teacher.

Under step one of the five-step analysis, the ALJ concluded that Plaintiff has not been engaged in substantial work activity since the onset date, and therefore was not automatically found to be not disabled.  The ALJ then concluded, under steps two and three, that while Plaintiff has severe impairments, Plaintiff has no impairment that meets the criteria of the listed impairments, and is therefore not presumed disabled without any further inquiry.

Under step four, an ALJ must then determine whether, despite her severe impairment, Plaintiff retains the residual functional capacity to perform her past relevant work.  *Sykes v. Apfel,* 228 F.3d 259, 263 (3d Cir. 2000).  In making this determination, an ALJ is required to take medical opinions into account.  Based on substantial medical evidence on record and hearing testimony, the ALJ determined that Plaintiff retained the residual functional capacity to perform the exertional demands of light work.  The ALJ's determination that Plaintiff's teaching job is considered "light" work is supported by substantial evidence.  The ALJ made this determination based on both Plaintiff's testimony as to how she performed her teaching job and evidence as to how it is generally performed in the national economy.  *Dictionary of Occupational Titles* 091.227-010.  Therefore, the ALJ held that Plaintiff was not disabled at the fourth step of the sequential evaluation.  Since a finding of disability or non-disability can be made at any point in the sequential analysis, the ALJ did not have to review Plaintiff's claim under step five to reach his conclusion that Plaintiff was not disabled for purposes of the Social Security Act.  20 C.F.R. §§ 404.1520(a) and 416.920(a).

Plaintiff argues that the ALJ erred in failing to "actively investigate" and "adduce evidence" during Plaintiff's hearing by securing the services of a medical expert.  In fact, the burden is on Plaintiff in a Social Security disability proceeding to present medical findings that

9

show that her impairment matches a listing in the federal regulations or is equal in severity to a listed impairment. *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112 (3d Cir. 2000). The ALJ is required to fully develop the record and explain his findings at step three, including an analysis of whether and why the Plaintiff's impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments. *Burnett*, 220 F.3d at 120. There was sufficient development of the record and explanation of findings in Plaintiff's case. For example, the ALJ identified and discussed the evidence pertaining to Plaintiff's hypertension, diabetes, retinopathy, herniated disc and pulmonary condition, and explained that the medical evidence did not establish that Plaintiff met any listed impairment. Specifically, the ALJ concluded that Plaintiff did not meet or equal Listings 9.08, or 4.03, as evaluated under Listings 2.02-2.04, 4.02, 4.04, 6.02 or 11.04. The ALJ further found that Plaintiff did not meet or equal any of the orthopedic listings in section 1.00 of Appendix 1, Subpart P. Regulations No. 4. Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal the Listing of Impairments contained in Appendix 1 of Supbart Plaintiff, Regulations No. 4.

Moreover, the burden is on the claimant to demonstrate by medical evidence that she is unable to return to her former occupation. *Cotter v. Harris,* 642 F.2d 700 (3d Cir. 1981). An ALJ may ask for and consider the opinions of medical advisors on the nature and severity of impairment but an ALJ is not required to call upon the services of a medical expert. 20 C.F.R. § 404.1527(f)(2). Therefore, Plaintiff's contention that the ALJ erred in failing to secure the services of a medical expert is without merit.

Plaintiff also cites SSR 96-6p, which mandates "the ALJ must consider the expert opinions at the paper review level." *Plaintiff's Brief* at 15. Plaintiff argues that her medical evidence should have been reviewed by a medical expert twice, once at the "lower level" paper review and again at the "hearing level" paper review. Plaintiff cites the medical evidence

10

submitted by Drs. Rice and Cooper, Christ Hospital, Passaic General Hospital and Meadowlands Hospital, all of which were submitted into record after the ALJ hearing. Plaintiff argues that a second expert review of Plaintiff's medical evidence at the hearing level "would result in a diminishment of function downward," and that "only a medical expert [could] address these complicated [medical] issues." *Id.*

In fact, the ALJ did consider an expert opinion at the paper review level as required under SSR 96-6p. Dr. Galakos, a state agency reviewing physician, determined Plaintiff was able to perform light physical activity in July 2002. As Plaintiff notes, medical evidence was submitted at the time of the ALJ hearing in May 2003. Social Security Regulations require only that a nonexamining state agent's assessment is admitted as "opinion evidence" and that the ALJ explain the weight afforded to that assessment. 20 C.F.R. § 404.1527(f)(2)(ii). In this case, the ALJ did exactly that in evaluating Dr. Galakos' residual functional capacity ("RFC") assessment against the medical evidence submitted post-hearing. *See* ALJ opinion 12-13. The ALJ afforded Dr. Galakos' assessment great weight since the record, in its totality, supported his assessment that Plaintiff could perform light physical activity. *Alexander v. Shalala,* 927 F. Supp. 785, 795 (D.N.J. 1995), *aff'd per curiam,* 85 F.3d 611 (3d Cir. 1996) (holding that the opinion of a non-examining medical physician may constitute substantial evidence in support of the ALJ's determination when other evidence in the record supports it). Specifically, the ALJ cited medical records received post-hearing from Passaic General Hospital and noted that Plaintiff's post bypass course was "unremarkable."

Plaintiff argues that the ALJ's analysis of her credibility was erroneous, because a claimant with nineteen years of continuous work as a teacher, should be given an inference of

11

credibility. *Dobrowolsky v. Califano,* 606 F. 2d 403 (3d Cir. 1979) (holding that the testimony of social security disability benefits claimant, who had a work record of twenty-nine years of continuous work, fifteen with the same employer, as to his capabilities was entitled to substantial credibility). However, a claimant's own description of physical or mental impairment is not enough to establish disability. *Green v. Schweiker,* 749 F.2d 1066, 1068-9 (3d Cir. 1984;) 20 C.F.R. § 404.1528(a). A claimant must also establish, by objective medical evidence, that she has a condition which reasonably could be expected to produce the alleged symptoms that are the cause of her inability to work. *Williams v. Sullivan,* 970 F.2d 1178, 1186 (3d Cir. 1992). Plaintiff does not meet the statutory definition of disability because she has failed to submit objective medical tests to show that her medical condition and residual capabilities satisfy the Social Security regulations. Substantial evidence supports the ALJ's finding that Plaintiff's allegations of total disability were not fully credible. For example, the objective clinical evidence does not support, to the extent alleged, Plaintiff's complaints of shortness of breath, blurry vision, or back pain. Moreover, objective medical findings do not support Plaintiff's allegations of disabling hypertension, cholesterol and diabetes since the records and clinical notes provide evidence that all conditions are controlled and/or stabilized with medication.

      Plaintiff further argues that the New Jersey Teacher's Pension System determination on disability should be persuasive with regard to Plaintiff's disability determination under the Social Security Regulations. While a determination by another government agency that Plaintiff is disabled is entitled to substantial weight, such determination is not binding on the Social Security Administration. *Kane v. Heckler,* 776 F.2d 1130, 1135 (3d Cir. 1985); 20 C.F.R. § 404.1505. Here, the ALJ considered Plaintiff's New Jersey Teacher's Pension disability determination but refused to grant the determination considerable weight since Plaintiff did not see any doctors except her own family physician to qualify for that pension. *See* ALJ opinion at 13. Moreover, Plaintiff testified that her retirement disability was based on chest pains and dizziness only, whereas Plaintiff's current claim encompasses a number of additional complaints. Accordingly,

the ALJ did not find the New Jersey Teacher's Pension System disability determination to be persuasive in Plaintiff's current case.

      Finally, Plaintiff argues that the Appeals Council should have considered the additional evidence it received after it rendered a decision. The Third Circuit holds that a district court may remand to the Commissioner when new evidence is submitted to the Appeals Council, but "only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)." *Matthews v. Apfel,* 239 F.3d 589, 593 (3d Cir. 2001). As to Plaintiff's first submission to the Appeals Council, Christ Hospital records reflecting Plaintiff's admission on March 31, 2004 through her release on April 5, 2004, this new evidence is not "material" as defined by Third Circuit case law. *See Newhouse v. Heckler,* 753 F.2d 283 (3d Cir. 1985). "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* at 287. Since the records submitted into evidence by Christ Hospital are related to Plaintiff's pre-existing diabetes, the evidence does not warrant remand for consideration.

      As to Plaintiff's second submission to the Appeals Council, a letter reflecting Plaintiff's approval by the New Jersey Teacher's Pension Fund for disability retirement,[1] Plaintiff failed to show "good cause" for her failure to submit this evidence sooner. Significantly, the letter is

---

[1] The letter was addressed to Plaintiff by the Board and Trustee Administration of the New Jersey Teacher's Pension Fund. The letter acknowledged that Plaintiff's application for Ordinary Disability Retirement had been approved and stated the terms and conditions by which she could continue to be eligible for benefits. The letter did not detail the Board's reasons for granting disability nor did it contain any specifics relevant to Plaintiff's case. While the letter was not part of the record at the time the ALJ rendered its decision, it is clear that the ALJ was aware that Plaintiff had been granted disability retirement by the New Jersey Teacher's Pension System, considered that determination, and found it unpersuasive in reaching his conclusion that Plaintiff was not disabled for purposes of the Social Security Act. *See infra* at 12.

dated March 5, 1999, well before the Social Security Administration proceedings began. Plaintiff had ample time to submit this evidence at any point in the administrative process up to the issuance of the ALJ decision.  Plaintiff failed to show good cause for the late submission of this letter.  Moreover, the letter is not "new" as the Third Circuit defines this requirement because it is merely cumulative of what is already in the record.  *Id.*  Accordingly, a "new evidence" remand is not warranted based on the new evidence Plaintiff submitted to the Appellate Council.

### V.     Conclusion

For the reasons stated in this Opinion, the ALJ's decision is supported by substantial evidence in the record and is affirmed.  An appropriate order affirming the decision will issue.

/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.